Clara S. Blood, Executrix etc. of A. R. Blood, deceased, for the use in part of the Brown Oil Company, *v.* Crew Levick Company.

*Deeds—Covenants and conditions—Effect of acceptance of deed.*

When a grantor conveys land by his deed upon terms and conditions stated therein, the grantee by accepting the deed consents to its conditions, and he is bound by them as fully as he could have bound himself by signing and sealing the covenants and conditions contained in the deed, and they may be enforced by the persons in whose behalf they are made with substantially the same effect.

*Deeds subject to lien of mortgage—Purchase money.*

A grantee of land who accepts a deed made "under and subject to the lien " of a mortgage given by his grantor and " subject to the payment of the mortgage " is a purchaser as between himself and his grantor of the entire estate, and is liable to pay the mortgage as part of the purchase money due from him.

*Deeds—Parol evidence to vary written instrument—Affidavit of defense —Mortgage.*

A vendee of land accepted a deed from his vendor in which it was stipulated that the vendee should pay a mortgage on the land made by the vendor to secure the payment of vendor's notes, but the vendee was not to be personally liable for the notes. In an action by the vendor to the use of the mortgagee against the vendee to recover the amount of the mortgage, the affidavit of defense contained an averment that the vendee understood the stipulation that he was not to look after the individual notes secured by the mortgage, as relieving him from his express covenant to pay the mortgage. It was not alleged that anything was omitted from, or added to the deed by fraud, accident or mistake, and it was not alleged that it was incorrectly read or explained to the defendant. *Held*, that the affidavit of defense was insufficient to prevent judgment.

*Dismissal of bill in equity—Res adjudicata.*

An affidavit of defense is insufficient to prevent judgment which avers that the controversy had already been adjudicated in an equity suit, and avers that the bill in the equity suit " was so proceeded in, that it was by the court dismissed." In such a case it may be that the bill was dismissed because the plaintiff's remedy was thought to be at law, and in just such a form of action as that in which the affidavit of defense was filed.

*Deeds—General warranty—Agreement to pay mortgage.*

A grantee in a deed agreed to pay off a mortgage created by his vendor. The deed contained a covenant of general warranty. There were other incumbrances upon the property besides the mortgage. *Held*, that the failure of the grantor to pay the other incumbrances did not relieve the grantee of his liability to pay the amount of the mortgage to the mortgagee.

Argued May 5, 1896. Appeal, No. 140, Jan. T., 1896, by defendant, from order of C. P. Warren Co., Dec. T., 1894, No. 41, making absolute a rule for judgment for want of a sufficient affidavit of defense. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Rule for judgment for want of a sufficient affidavit of defense. Before NOYES, P. J.

Reference is made to the case of Blood v. Crew Levick Co., 171 Pa. 328, for certain facts.

. Plaintiff's statement of claim was as follows :

The plaintiff, Clara S. Blood, brings this suit, as the executrix of A. R. Blood, deceased, late of said county, who died intestate December 1, 1891, against the defendant, the Crew Levick Company, a corporation existing under the laws of Penn-

sylvania, and claims to recover from it the sum of $15,333.33 with interest from April 29, 1889, a part of which sum is due by the plaintiff to the Brown Oil Company, and for a more full and detailed statement of her cause of action and the facts connected therewith, the plaintiff says:

That on April 29, 1889, A. R. Blood, the testator, having sold to I. H. Lockwood and others, associated as the Brown Oil Company, certain freehold and leasehold estates in certain oil producing lands in tract No. 557, Mead township, in said county, and having received in payment of the purchase money thereof the notes of said Brown Oil Company to his own order, secured by a mortgage on said estates for the sum of $46,000, payable in forty-eight equal monthly installments, with interest from said date; and the said A. R. Blood having negotiated and transferred said Brown Oil Company notes, afterwards and prior to May 18, 1891, said A. R. Blood purchased back and reacquired said lands from said Brown Oil Company, and undertook and agreed to pay and take up said notes of said Brown Oil Company then unpaid as fast as the same became due, and to pay and satisfy said mortgage debt of said Brown Oil Company to him, the said A. R. Blood, and he became bound to the said Brown Oil Company so to do. That thereafter, to wit, on May 18, 1891, the said defendant being desirous of purchasing said freehold and leasehold estates of said Blood in tract No. 557, and also his estates in other oil lands in said county, said A. R. Blood sold and conveyed said estates in said tract No. 557, as well as his estates in other oil producing lands, to said defendant by two deeds of conveyance, "in consideration of the sum of one dollar and other valuable considerations," to said A. R. Blood, to wit, a certain amount of capital stock of said defendant company transferred to him; and in consideration that said defendant would hold said lands subject to the lien of the mortgage to said A. R. Blood, held by him for the benefit of the said Brown Oil Company, on which there was unpaid $24,916.68, and certain other mortgages thereon as set forth in said deeds, and indemnify the said A. R. Blood and the plaintiff, as his executrix, against the payment of said mortgage debts; and in further consideration of the express covenant on part of said defendant in said deed, that it would accept the title and possession of said lands upon condition of the pay-

ment of said sums so secured by mortgages thereon, and especially the sum due A. R. Blood on the mortgage to him as hereintofore mentioned, which said covenants of indemnity as well as the covenant for payment of said mortgage debt will more fully appear in the copies of said deeds hereto attached and made a part of plaintiff's statement of claim, and marked exhibits " A " and " B."

That the said defendant on the day aforesaid, to wit, May 18, 1891, accepted said deeds and took possession of said lands subject to said covenants, and continued to pay the installments of said mortgage to said A. R. Blood and to this plaintiff as it undertook to do, until about the month of February, 1892, when it wholly ceased to pay said installments, and there remained unpaid upon said mortgage debt at that time the sum of $15,333.33 with interest from April 29, 1889, and that the entire unpaid balance of said mortgage debt to said A. R. Blood, to wit, $15,333.33, became due April 29, 1893, and has ever since remained due and unpaid by it; notwithstanding said defendant continued in possession of said land and has received the oil produced therefrom.

That by reason of the default of said defendant to indemnify said A. R. Blood and this plaintiff, as his executrix, and to pay said mortgage debt, as it undertook to do, the said plaintiff has been compelled by reason of threats of suits to pay and assume to pay said balance of said mortgage debt, to wit, the sum of $15,333.33 with interest from April 29, 1889.

And the plaintiff further avers that since the month of February, 1892, the said defendant has expressly agreed and promised to pay said mortgage debt for the benefit of said plaintiff, but has, notwithstanding said undertaking, neglected and refused to pay the same. By reason thereof the plaintiff claims to recover the sum of $15,333.33 with interest thereon from April 29, 1889, as the damages justly due by the defendant in this behalf, and therefore she claims the right to maintain this suit.

The following affidavits of defense were filed :

The said freehold and leasehold estates mentioned in the statement filed in the above cause were conveyed to the defendant under and subject to the liens of the mortgages referred

to in the deeds set out in the exhibits attached to the said statement. The consideration for the said several conveyances was in each case the sum of $1.00 and certain shares of the capital stock of the defendant. Neither by the said deeds, nor as a consideration for the same, nor in any other way whatsoever, did the defendant agree to indemnify the said A. R. Blood or his said executrix or any other person against the payment of the mortgages in the said deeds mentioned or referred to, nor any part of the said mortgages, nor did the defendant accept title or possession of the lands in the said deeds mentioned, or any of them, upon the condition of the payment by the defendant of the sums, or any of them, or any part of them, secured by the said mortgages or any of them. The defendant did not covenant or in any manner agree with the said A. R. Blood, or any person, that it would accept the title or possession of the said lands upon condition of the payment of the sums, or any part thereof, secured by the said mortgages or secured by any of the said mortgages. The said defendant did not at any time covenant or in any way agree to pay the sum due or to become due A. R. Blood upon the mortgage executed by the Brown Oil Company to him to secure the payment of $46,000 or any part thereof. The defendant did not at any time covenant or agree in any way with the said A. R. Blood or any other person to pay the said A. R. Blood or any other person the amount or any part thereof due, or to become due upon said mortgage, or upon any other mortgage whatsoever, secured upon the leaseholds or freeholds mentioned or described in the exhibits attached to the said statement. At the time of the conveyance by the said A. R. Blood to the defendant of the leaseholds and freeholds mentioned or described in the exhibits attached to the said statement, it was especially agreed by and between the said A. R. Blood and the said defendant that the said defendant should not be held in any manner or to any person liable personally for the payment of any part of the indebtedness secured by the mortgages upon the said leaseholds or freeholds, or any of them, but that the conveyance of the said leaseholds and freeholds should be made to the defendant under and subject to the liens of such mortgages, without there being in any way any liability or obligation on the part of the defendant, as an indemnity to the grantor or otherwise, to pay any portion of the indebtedness

secured by the said mortgage or any part of them. Any payments made by the said defendant for or on account of any notes or any other indebtedness secured by the said mortgages, or any of them, were made by the said defendant not by reason of the defendant being in any way personally bound to pay the said sums, or any part of them, but simply in order to decrease the amount of the liens against the said premises, and in order to prevent the said mortgages from being foreclosed. The defendant has not at any time agreed or promised to pay the said mortgage debts, or any of them, or any part of them. The said defendant has not at any time agreed or promised to pay the mortgage debts, or any of them, or any part of them, for the benefit of the plaintiff. The said defendant is not in any way indebted to the said plaintiff nor to the said A. R. Blood. The said plaintiff has not paid anything for or on account of the said mortgages, or any of them, or for or on account of any part of the indebtedness secured by the said mortgages or any of them. The said plaintiff filed her bill in equity in the court of common pleas of Warren county, to September term, 1894, No. 25, wherein and whereby she did set up the same claim which she now sets up in the present action, and that the said bill was so proceeded in that it was by the court dismissed. All of which the defendant will prove upon the trial of the above case.

Defendant filed this additional affidavit of defense:

Prior to and at the time of the execution of the deeds set out in exhibits A and B attached to the statement filed in this case, it was agreed by and between the said Arthur R. Blood, the grantor, and the said Crew Levick Company, the grantee, that the said grantee should not in any way whatsoever become liable or responsible, either as principal debtor or surety, or in any other capacity whatsoever, for any of the mortgages or any debt or any part of any debt secured by any mortgage upon any of the properties mentioned in the said deeds; the said deeds were accepted by the said company upon the said agreement, and the said deeds were to be drawn so as to carry out that agreement. The said company accepted the said deeds under the belief that the said deeds did carry out that agreement, and if there is anything in the said deeds contrary to such agreement, the

said deeds do not correctly state the terms and conditions under which the conveyance of the said properties was to be made by the said Arthur R. Blood to the said company, and the defendant prays that the said deeds may be reformed so as to carry out and effectuate the intent and agreement under which the said deeds were accepted by the said company. At the time of the execution and delivery of the said deeds there was upon the premises mentioned in the said deeds, in addition to and prior to the mortgages mentioned in the said deeds the following mortgages, which were prior incumbrances to those mentioned in the said deed, namely: On the premises first and second described in the said deed marked exhibit "A," and on the premises first, second, third, and fourth described in the said exhibit B, there were in addition to and prior to the mortgages upon the said premises mentioned in the said deed a mortgage executed by C. W. Schofield to the said A. R. Blood, dated February 13, 1889, and recorded in the said county to secure the payment of negotiable promissory notes, aggregating the sum of $23,000, upon which there was due at the time of the delivery of the said deed at least the sum of $6,000 ; also a mortgage executed by A. R. Blood to C. W. Schofield, dated March 20, 1889, and recorded to secure the payment of negotiable promissory notes, aggregating the sum of $68,000, upon which there was due at the time of the execution and delivery of the said deeds at least the sum of $46,000. On the premises third described in the said exhibit A, and on the premises fifth, sixth, seventh and eighth described in said exhibit B, there was a mortgage executed by C. W. Schofield to I. H. Lockwood, dated May 4, 1889, and recorded in the said county to secure the payment of negotiable promissory notes, aggregating the sum of $44,000, upon which there was due at the time of the execution and delivery of the said deeds at least the sum of $20,000. Under proceedings for the statutory foreclosure of the said last-mentioned mortgage executed by C. W. Schofield to I. H. Lockwood, the said premises were sold by the sheriff of the said county in or about June, 1892. On the said premises third described in the said exhibit A, and on the said premises fifth, sixth, seventh, and eighth described in the said exhibit B, there was also at the time of the execution and delivery of the said deeds another mortgage, prior to the mortgage on the said

premises mentioned in the said deed, a mortgage executed by H. E. Brown to C. W. Schofield, dated June 7, 1889, and recorded in the said county to secure the payments of negotiable promissory notes, aggregating the sum of $52,000, upon which said mortgage at the time of the execution and delivery of the said deeds there was due at least the sum of $30,000. On the premises seventh described in the said exhibit A there was at the time of the execution and delivery of the said deeds, in addition to the mortgages mentioned in the said deeds, a mortgage made by W. H. Pickett et al. to J. B. Ross, dated October 4, 1889, and recorded in the said county to secure the payment of negotiable promissory notes, aggregating the sum of $13,875, upon which there was due at the time of the execution and delivery of the said deeds at least the sum of $6,000, also a mortgage executed by P. J. Bayer et al. to the First National Bank of Warren, Pa., dated January 13, 1890, and recorded in the said county to secure the payment of negotiable notes, aggregating the sum of $5,000.

The existence of these two incumbrances on the said premises anterior to the mortgage mentioned in the said deed, executed by A. R. Blood to P. J. Bayer et al., to secure the payment of promissory notes aggregating $25,000, rendered the said premises practically worthless to the said defendant. Under proceedings upon the said last-mentioned mortgage the said premises last above mentioned were sold by the sheriff of the said county during the year 1893, and the said defendant was compelled to remove from possession of the said premises.

On the premises twelfth, thirteenth, and fourteenth described in the said exhibit B there was at the time of the execution and delivery of the said deed the following mortgage, which was a prior incumbrance to the mortgage upon the said premises mentioned in the said deed, namely, a mortgage executed by C. W. Schofield to L. C. Noyes et al., dated August 29, 1889, and recorded in the said county to secure the payment of negotiable promissory notes, aggregating the sum of $50,000, upon which mortgage there was due at the time of the execution and delivery of the said deeds at least the sum of $25,000. Under the statutory foreclosure proceedings upon the last-mentioned mortgage the said premises last above mentioned were sold by the

sheriff of the said county in or about June, 1892, and the defendant was dispossessed from the said premises.

Upon the premises fifteenth, sixteenth and seventeenth described in the said exhibit B there was at the time of the execution and delivery of the said deeds a mortgage which was prior to the mortgage upon the said last-mentioned premises referred to in the said exhibit B, namely, a mortgage executed by E. O'Donnel et al. to E. B. Eldred, dated May 24, 1890, and recorded in the said county to secure the payment of negotiable promissory notes, aggregating the sum of $4,000, upon which mortgage there was due at the time of the execution and delivery of the said deeds at least the sum of $800. The defendant paid the said mortgage mentioned in the said exhibit B as being upon the premises last above referred to, and in addition thereto, and in order to prevent foreclosure proceedings upon the said mortgage, executed by the said E. O'Donnel to E. B. Eldred, the defendant was obliged to pay off the notes secured by the said mortgage the amount of $949.63 during the year 1894. It was the duty of the said A. R. Blood to pay off and have satisfied all the mortgages prior to those mentioned in the said exhibits A and B, and the said A. R. Blood at the time of the execution and delivery of the said deeds to the defendant agreed with the defendant that he would pay off and have satisfied all incumbrances prior to the mortgages mentioned in the said exhibits A and B.

Relying upon the said agreement, the defendant accepted the said deeds and paid to the said A. R. Blood in the stock of the said company the sum exceeding $100,000 as consideration for the said conveyance. By reason of the existence of the said mortgage executed by C. W. Schofield to L. G. Noyes et al., and the foreclosure proceeding thereon and the dispossession of the defendant from the said premises, the defendant has suffered damage to the amount of $32,729.28. By reason of the default of the said A. R. Blood in not paying the mortgages other than that executed by C. W. Schofield to L. G. Noyes et al., which were prior to the mortgages mentioned in the said deeds, the defendant has suffered damages amounting to $17,398.81. Upon the trial of this case the defendant will claim a certificate against the plaintiff as executrix of the will of the said A. R. Blood, deceased, for the sum of $50,128.09, together

with interest thereon, for the damages sustained by the said default of the said A. R. Blood. The said notes, to secure the payment of which all of the mortgages above named were given, were negotiable promissory notes and were negotiated and in the hands of bona fide holders for value, so that the defendant could not by paying off the said notes, secured by the mortgages prior to those mentioned in the said deeds, place itself in a position to defend against the mortgages mentioned in the said deeds. All of which facts the defendant will prove upon the trial of the said case. The statement does not show what, if anything, is due to the use plaintiff.

The following supplemental affidavit of defense was filed:

There is now due and payable promissory notes aggregating in value $2,000, together with interest from February 13, 1889, secured by the said mortgage executed by C. W. Schofield to A. R. Blood, dated February 13, 1889, and there are now due and payable promissory notes aggregating $13,300, together with interests from March 20, 1889, secured by the said mortgage executed by A. R. Blood to C. W. Schofield, dated March 20, 1889.

*Error assigned* was order making absolute a rule for judgment for $21,410.95, for want of a sufficient affidavit of defense.

*Theodore F. Jenkins*, with him *Allen & Sons*, for appellant.— Where an instrument is drawn or executed which professes or is intended to carry into execution an agreement previously entered into, but which, by mistake of the draughtsmen, either as to fact or to law, does not fulfill that intention, equity will correct the mistake. 1 Story's Equity, sec. 115; Heacock v. Fry, 14 Pa. 540; Metzgar's App., 71 Pa. 330; Wilson v. Ott, 173 Pa. 253; Hunt v. Rousmaniere, 1 Peters, 1; Walker v. France, 112 Pa. 203; Thomas v. Loose, 114 Pa. 35; Ferguson v. Rafferty, 128 Pa. 337.

The only ground for the present action to rest on is that it is for the recovery of part of the consideration for the conveyances to the defendant, and in such a suit the existence of prior incumbrances is a defense: Steinhauer v. Witman, 1 S. & R. 438.

A purchaser who has received his deed and gives a mortgage for the purchase money, may deduct therefrom incumbrances known to him at the time he made the contract: Wolbert v. Lucas, 10 Pa. 73; Peck v. Jones, 70 Pa. 83.

Whatever may be the rights of the use plaintiff, they cannot rise higher than those of the defendant, for they have the same source. In other words, the set-off claimed is an equity: Ardesco Oil Co. v. North American Oil Co., 66 Pa. 375.

*Samuel T. Neill*, with him *H. E. Brown*, for appellee.—A mistake or ignorance of the law affords no ground for relief in equity: Rankin v. Mortimer, 7 Watts, 372; Good v. Herr, 7 W. & S. 253; Bispham's Eq. 187; Menges v. Oyster, 4 W. & S. 20; Blood v. Crew Levick, 171 Pa. 328; Tagg v. Behring, 10 Atl. Rep. 782; Anspach v. Bast, 52 Pa. 356; Clark v. Allen, 132 Pa. 40; Ziegler v. McFarland, 147 Pa. 607.

The existence of incumbrances prior to the Brown Oil Company mortgage affords no ground of defense: Lighty v. Shorb, 3 P. & W. 447; Fuhrman v. Loudon, 13 S. & R. 386; Wilson's App., 109 Pa. 606; Rawle on Covenants, 637; Hart v. Porter, 5 S. & R. 201; Withers v. Atkinson, 1 Watts, 236; Dickinson v. Voorhees, 7 W. & S. 353; Tod v. Gallagher, 16 S. & R. 261; Kinley v. Crane, 34 Pa. 146.

The defendant is not entitled to the defense of set-off: Ardesco Oil Co. v. N. A. Oil Co., 66 Pa. 375; Read v. Penrose, 36 Pa. 214; Tagg v. Bowman, 108 Pa. 273; Bank of U. S. v. Macalester, 9 Pa. 475; Thomas v. Winpenny, 13 W. N. C. 93; Kensington Bank v. Shoemaker, 11 W. N. C. 215; Dickinson v. Callahan, 19 Pa. 227; Bland v. Ulmstead, 23 Pa. 317; Carr v. Lowry, 27 Pa. 257; Braman's App., 89 Pa. 78.

The cause of the damage is not specifically set forth: McBriar v. Marshall, 126 Pa. 390; Ludington v. North, 141 Pa. 184.

The matters set up by way of defense are not consistent.

OPINION BY MR. JUSTICE WILLIAMS, October 5, 1896:

The judgment now appealed from was entered for want of a sufficient affidavit of defense. The original and supplemental affidavits of defense are therefore to be examined to see if they set forth any ground of defense good against the Brown Oil Company. Looking at them as constituting together a state-

ment of the defendant's case, we find four lines of defense alleged. These are, first, a denial of liability under the covenants contained in the deed under which the defendant acquired title to the freehold estates. Second, the existence of a parol understanding, or agreement between A. R. Blood, the vendor, and the defendant that the defendant should not be " personally liable " for the payment of any part of the mortgage of the Brown Oil Company. Third, an adjudication in favor of the defendant upon the question of its liability, resulting from the dismissal of a bill in equity filed in the same court by the same plaintiff against the defendant. The fourth is the existence of cross demands against A. R. Blood for the nonpayment of incumbrances upon the property conveyed by him to the defendant, not assumed in any manner by it, and some of which had been proceeded upon by the holders, to the great loss, as it is asserted, of the defendant. Is either of these a good defense against the use plaintiff in this case? The first is effectually disposed of by the case of Blood v. Crew Levick Co., 171 Pa. 328, in which we held that the acceptance by the defendant from A. R. Blood of the deed for the properties conveyed in fee, with its stipulations relating to this and other incumbrances, amounted to an express covenant to pay them which would support an action in the name of the covenantee for the use of the holder of the mortgage. We are agreed that the deed was correctly interpreted in that case and that the question of the liability of the defendant upon its express covenant is not an open one. Since that case was decided, substantially the same question has arisen in the court of errors and appeals of New Jersey in the case of Green v. Stone, 34 Atl. Reporter, 1099. In that case a vendee had covenanted to pay a mortgage covering the property purchased by him. Its amount was taken into consideration, as in this case, as part of the purchase money, and was to be paid directly to the holder of the mortgage. Proceedings for foreclosing the mortgage were entered upon and the property brought to sale. It did not bring enough to pay the mortgage debt, and the purchaser was held liable to the holder of the mortgage on his covenant for the residue of the mortgage debt. A parol agreement was set up in that case, as in this, that the purchaser was not to be personally liable on his covenant, but in the absence of fraud or mutual mistake the court declined to

reform the covenant sued on. The reason for this holding is very plain. When a grantor conveys land by his deed upon terms and conditions stated therein, the grantee by accepting the deed consents to its conditions. He is bound by them as fully as he could have bound himself by signing and sealing the covenants and conditions contained in the deed, and they may be enforced by the persons in whose behalf they are made with substantially the same effect.

The second line of defense is equally unavailing. It is not alleged that anything was omitted from, or added to, the deed by fraud, accident or mistake. It is not alleged that it was incorrectly read or explained to the defendant. It is in substance an averment that the defendant understood the stipulation that it was not to look after the individual notes secured by the mortgage as relieving it from its express covenant to pay the mortgage itself. This construction was not adopted in Blood v. Crew Levick Co., supra, and cannot be sustained. The parties dealt at arms' length. The amount of this mortgage was part of the purchase money which the defendant agreed to pay for the property it purchased. It was to be paid, not to Blood, but to his creditor ; and this was expressly provided for by the covenant in the deed. In the absence of any definite allegation of fraud or mistake, it is elementary law that the written covenant must prevail. The allegation of "res adjudicata" does not rest on any such statement of the case, or of the point decided in the equity proceeding, as would enable us to determine whether the court below was in error or not. It may well be that the bill was dismissed because the plaintiff's remedy was thought to be at law and in just such a form of action as we now have before us. The averment in the affidavit of defense is " that the said bill was so proceeded in that it was by the court dismissed." This does not show us what was decided, or the reason for which the bill was not entertained. This brings us to the fourth and last line of defense, viz, the existence of cross demands against A. R. Blood. If this action was brought for the recovery of purchase money belonging to A. R. Blood, and payable to him as owner, a cross demand could be properly set up against him. But while it is for purchase money for property sold to the defendant by Blood, it is for the use of one to whom so much of the purchase money as is now in contro-

versy was appropriated at the time of the purchase, and to whom by the covenants in the deed the defendant undertook to make payment. The amount of this mortgage debt was a part of the purchase money to be paid for the property conveyed and it was to be paid directly to the holder of the mortgage who is now asking payment. It is alleged that there were other incumbrances upon the property that the vendor agreed to remove, and that he has not done so. The defendant was at the time content to take the vendor's covenant of general warranty as the security for the payment of these known incumbrances and upon this basis to enter into the covenant to pay the plaintiff's mortgage. There has been no change in the situation since. Nothing is now known that was not fully known at the time, and that did not enter into the transaction when the covenant on which this action rests was made. A party may debar himself by his own agreement, or by his conduct, from insisting upon a set-off: Ardesco Oil Company, 66 Pa. 375; Reed v. Penrose, 36 Pa. 214. The defendant is in that situation. It is not now satisfied with the covenants of general warranty of its vendor as security against the incumbrances he assumed to pay. It thinks it should have more protection than it provided for itself when its own covenant was entered into. If so its remedy is against its vendor. It may be that the covenant to pay this mortgage was an improvident one. It may be that the warranty of A. R. Blood is an inadequate protection for the defendant against incumbrances the existence of which it knew at the time it accepted the deed for the freehold properties, but the payment of which it did not assume. This is not our question. The point we are to consider and determine is whether the failure of Blood to pay the debts which he promised to pay is any just reason for relieving the defendant from its express covenant to pay this mortgage, made with full knowledge of all the circumstances and upon such security for Blood's performance as was at the time satisfactory. Upon this question our judgment is in harmony with that of the learned judge of the court below. The judgment was rightly entered and is now affirmed.